**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRUE BEY,<br>Plaintiff,<br>v.<br>TRANS UNION LLC, *et al.*,<br>Defendants. | No. 26-cv-2756<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is defendant Credit Acceptance Corporation's ("CAC") motion to compel arbitration and stay the case. ECF Nos. 10, 10-1 ("Moving Br."). Plaintiff True Bey ("Plaintiff") opposed the motion, ECF No. 15 ("Opp'n Br."), and CAC replied, ECF No. 19 ("Reply Br."). The Court decides the motion without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will grant CAC's motion to compel arbitration and stay the case.

## I. BACKGROUND

This case arises out of alleged misreporting of Plaintiff's consumer credit information. ECF No. 1 ("Compl.") ¶¶ 1–4. Plaintiff, a New Jersey resident, *id.* ¶ 7, purchased a vehicle from a New Jersey-based seller and financed the purchase pursuant to a "Retail Installment Contract" (the "Contract"), ECF No. 10-2 at 2; ECF No. 10-3 at 2. CAC accepted assignment of the Contract from the seller and serviced the resulting account. ECF No. 10-3 at 5, 8.

Plaintiff filed the complaint in this action on March 16, 2026, alleging violations of the Fair Credit Reporting Act ("FCRA") by defendants Trans Union LLC ("Trans Union"), Experian

Information Solutions, Inc. ("Experian"), and CAC (collectively, the "Defendants").[1] *See* Compl. at 1–7. He alleges Defendants maintained and furnished inaccurate credit information regarding Plaintiff and failed to reasonably investigate his written disputes of that information. *Id.* ¶¶ 13–22, 27–30, 33–34. He also alleges that CAC, in response to his dispute, provided him with another customer's personal and account information. *Id.* ¶¶ 23–26, 31–32.

In the instant motion, CAC contends the Contract includes a valid and enforceable arbitration agreement governing Plaintiff's FCRA claims (the "Arbitration Clause"). Moving Br. at 1–10. CAC seeks to stay the case pending resolution of the arbitration. *Id.* at 10. Relevant here, the Arbitration Clause states that either Plaintiff or CAC may elect to submit "any Dispute" to binding arbitration. ECF No. 10-3 at 6. A "Dispute" is "any controversy or claim between [the parties] arising out of or in any way related to th[e] Contract[.]" *Id.* The Arbitration Clause expressly reserves disputes "about [its] validity, enforceability, coverage or scope" for a court rather than an arbitrator. *Id.*

Plaintiff argues the Arbitration Clause does not apply to his FCRA claims. Opp'n Br. at 4–7. He alternatively requests limited discovery on the issue of arbitrability before the Court decides the instant motion. *Id.* at 7. He also argues any stay should only apply to his claims against CAC and not those against the other Defendants. *Id.*

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing,*

---

[1] Plaintiff also sued Equifax Information Services LLC, which settled with Plaintiff and was voluntarily dismissed from the action with prejudice. ECF Nos. 16–17, 23.

*Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Pursuant to the FAA, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement." *Id.* (citing 9 U.S.C. §§ 3, 4). When deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Sapp v. Indus. Action Servs., LLC*, 75 F.4th 205, 212 (3d Cir. 2023) (citation modified). In so doing, the Court "appl[ies] state-law principles of contract formation." *Bacon*, 959 F.3d at 600.

## III. DISCUSSION

### A. The Court Applies the Rule 56 Standard of Review.

In determining whether a valid arbitration agreement exists, the Court must first decide whether to apply the Rule 12(b)(6) motion to dismiss or Rule 56 summary judgment standard of review. *See Adler v. Gruma Corp.*, 135 F.4th 55, 63 (3d Cir. 2025). "If the motion can be decided based on the face of a complaint, and documents relied upon in the complaint, a motion-to-dismiss standard should be used; otherwise, the summary judgment standard should be applied." *Id.* (citation modified).

Here, the arbitration agreement is not mentioned in or attached to the complaint. Instead, CAC submitted it into the record for the first time with the instant motion. Because it is not clear on the face of the complaint that the parties agreed to arbitration and the motion cannot be resolved without consideration of evidence outside the pleadings, Rule 56 applies.

Under that standard, the party seeking to compel arbitration must show "that there is no genuine dispute as to any material fact and that [it] is entitled to an order compelling arbitration as a matter of law." *Id.* The Court must view the facts and draw all inferences in favor of the non-moving party. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 n.7 (3d Cir. 2024).

Invoking the summary judgment standard, Plaintiff requests limited discovery on the issue of arbitrability before the Court decides the instant motion. Opp'n Br. at 3, 7. It is true that "any time the [C]ourt must make a finding to determine arbitrability, pre-arbitration discovery *may* be warranted[,]" *Young*, 119 F.4th at 319 (citation modified), but only if the plaintiff raises a factual dispute as to the existence or scope of the arbitration agreement, *id.* at 320. To do so, the party must present "reliable evidence" raising such a dispute. *Id.* at 319 (citation modified). Mere "naked assertion[s]" will not suffice. *Id.* (citation modified).

Here, Plaintiff states that he "does not concede the legal effect, completeness, or reliability of th[e] documents [submitted by CAC] for purposes of this motion." Opp'n Br. at 7. Plaintiff also attaches a declaration and exhibits to his brief, including CAC's response letter to Plaintiff's dispute and correspondence purportedly showing CAC supplied Plaintiff with another customer's information. *Id.* at 9–15. However, he does not deny signing or initialing the Contract or Arbitration Clause, point to any defect in the signature process, or offer facts suggesting that he was not made aware of the Arbitration Clause. And while the documents Plaintiff submitted may concern CAC's response to his reporting dispute, they do not raise a genuine dispute of material fact regarding the formation or enforceability of the arbitration agreement. Therefore, the Court will deny Plaintiff's request for limited discovery on the issue of arbitrability and resolve the motion based on the materials included in the briefing.

**B. There Is No Genuine Dispute of Material Fact Precluding Enforcement of the Arbitration Clause.**

The Court turns to whether there is any genuine dispute of material fact as to the existence of a valid and enforceable arbitration agreement between Plaintiff and CAC. It finds none.

Under New Jersey law,[2] valid and enforceable contracts require "mutual assent, offer and acceptance, and consideration." *Fazio v. Altice USA*, 337 A.3d 304, 311 (N.J. 2025) (citation modified). "[P]arties to an arbitration contract must clearly and unambiguously understand the distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 312.

In support of its argument that Plaintiff agreed to arbitrate his FCRA claims, CAC points the Court to the Contract and the Arbitration Clause. Moving Br. at 8–9. The Arbitration Clause is part of the Contract and is clearly labeled as an "AGREEMENT TO ARBITRATE[,]" with the first paragraph explaining that "[a]rbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury." ECF No. 10-3 at 6. It explicitly states that it applies to disputes between "You[,]" defined as Plaintiff, and "We" or "Us[,]" expressly defined to include CAC. *Id.* Additionally, the first page of the Contract includes a section indicating that it contained an Arbitration Clause and directing Plaintiff to its full text, as well as a section stating that there were additional terms and conditions, including the Arbitration Clause, that were part of the Contract. *Id.* at 2. Plaintiff electronically initialed the Arbitration Clause as well as the notices on the first page of the Contract identifying and incorporating the Arbitration Clause. *Id.* at 2, 6. He also electronically signed the Contract, indicating that he agreed to its terms and acknowledging that he had received, read, and understood the Contract. *Id.* at 2–3. And he signed a form in wet ink authorizing the use of his electronic signature to sign the Contract. *Id.* at 10.

---

[2] The Contract includes a clause stating that the rights and duties of the parties "are governed by the law of the state of the seller's address"—in this case, New Jersey. ECF No. 10-3 at 2, 5. Plaintiff does not contest this choice-of-law provision, so the Court applies New Jersey law.

The Arbitration Clause provided that Plaintiff could reject its terms via written notice within 30 days of the effective date of the Contract. *Id.* at 6. According to a sworn declaration submitted by an employee of CAC's Compliance Department, a search of the company's records produced no such rejection notice sent by Plaintiff or any evidence that he had given such a notice—points that Plaintiff does not dispute. ECF No. 10-2 ¶¶ 7–8.

As noted above, Plaintiff does not present any reliable evidence challenging the formation of the Contract or his assent to the Arbitration Clause. Because he "fails to seriously challenge business records . . . unambiguously showing that he agreed to arbitration[,]" the Court finds no genuine dispute of material fact to preclude finding that there was a valid arbitration agreement between Plaintiff and CAC. *Carroll v. Hyundai Motor Am.*, No. 23-1164, 2026 WL 1815928, at *5 (D.N.J. June 24, 2026).

### C. There Is No Genuine Dispute of Material Fact as to the Scope of the Arbitration Clause.

The Court next addresses whether there are any genuine disputes of material fact as to the scope of the Arbitration Clause. Once again, it finds none.

In assessing the scope of an arbitration agreement, the Court "focus[es] on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014) (citation modified). Although the Arbitration Clause does not expressly discuss FCRA claims, it permits the parties to arbitrate "any controversy or claim between [the parties] *arising out of or in any way related to* th[e] Contract," including any "claims based on . . . *violations of laws, statutes*, ordinances or regulations *or any other legal or equitable theories*." ECF No. 10-3 at 6 (emphasis added).

Plaintiff contends that the Arbitration Clause only covers disputes pertaining to the enforcement of the Contract itself and not "post-dispute" duties, such as those arising under the

FCRA. Opp'n Br. at 4. He points to the fact that CAC allegedly provided him with another customer's information during the dispute-investigation process as evidence that his claims are not covered by the Arbitration Clause. *Id.* at 5–6.

The Court does not find these arguments persuasive. The plain and unambiguous language of the Arbitration Clause contradicts Plaintiff's arguments that it only covers contractual disputes. Although Plaintiff's FCRA claims implicate statutory duties rather than express contractual obligations, they concern CAC's reporting and investigation of Plaintiff's account arising from the Contract and thus "aris[e] out of or relat[e] to" the Contract.[3] ECF No. 10-3 at 6. Plaintiff's allegation that CAC provided him with another customer's information similarly pertains to his claim that CAC inadequately investigated his account rather than any separate transaction. Therefore, Plaintiff's claims against CAC fall within the scope of the Arbitration Clause. *See Sinclair v. Citicards CBNA*, 836 F. Supp. 3d 568, 576–77 (D.N.J. 2026) (holding plaintiff's FCRA claim was subject to arbitration agreement covering "any claim, dispute or controversy . . . arising out of or related to" plaintiff's account with defendant and rejecting plaintiff's argument that arbitration did not apply to "post-contractual conduct"); *Davis v. Ally Fin. Inc.*, No. 23-22897, 2024 WL 2239144, at *1, 4 (D.N.J. May 17, 2024) (holding that arbitration clause covering "all claims . . . that may arise out of or relating to [an] agreement" to purchase and finance vehicle "plainly" covered plaintiff's FCRA claim (citation modified)).

In light of the foregoing, the Court finds that there are no genuine disputes of material fact as to the scope of the Arbitration Clause and will grant CAC's motion to compel arbitration.

---

[3] Plaintiff cites several cases that address the FCRA's investigation requirements. Opp'n Br. at 5–6. Those decisions may be relevant to the merits of his claims against CAC, but they do not address whether those claims fall within the scope of the Arbitration Clause.

**D. The Court Stays the Case.**

Finally, the Court must determine whether to grant CAC's request to "stay this case pending arbitration[.]" Moving Br. at 10. Plaintiff argues the stay should apply only to his claims against CAC and not his claims against Trans Union and Experian. Opp'n Br. at 7–8.

Pursuant to § 3 of the FAA, the Court must stay claims that fall within the scope of an arbitration agreement until their resolution. 9 U.S.C. § 3; *see Mendez v. P.R. Int'l Cos., Inc.*, 553 F.3d 709, 715 (3d Cir. 2009) ("In order for a party to be the subject of a mandatory stay pending arbitration . . . that party must have committed itself to arbitrate one or more issues in suit."). Therefore, the Court will stay the claims against CAC. As for the claims against Experian and Trans Union, the Court may stay those claims "as a matter of its discretion to control its docket." *Mendez*, 553 F.3d at 712 (citation modified). It may do so where "the issues in arbitration are related to (if not strictly dispositive of) the issues before the court." *Sheth v. Artech LLC*, No. 25-1205, 2025 WL 1588021, at *5 (D.N.J. June 5, 2025) (citation modified).

Here, Plaintiff specifically alleges that Experian and Trans Union prepared incorrect consumer information based on inaccurate tradelines reported by CAC. Compl. ¶¶ 13–15. Although there are likely some distinct inquiries regarding the individual conduct of each Defendant, the claims share key factual questions concerning Plaintiff's consumer credit information. *See Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022) (holding a plaintiff must show that "inaccurate information was included in a consumer's credit report" to establish liability under 15 U.S.C. § 1681e(b)); *Lord v. Experian Info. Sols., Inc.*, No. 23-3949, 2024 WL 1172766, at *1 (S.D. Ohio Mar. 19, 2024) ("To succeed on his claims against Experian, Plaintiff must show that the information Verizon furnished to Experian was inaccurate."). Given the apparent overlapping factual issues, staying Plaintiff's claims against CAC while permitting them to proceed against Experian and Trans Union would be "an

inefficient use of judicial resources and may result in unnecessary expenses for the parties[,]" particularly because discovery has not begun. *Martinez v. Insight Glob. LLC*, No. 25-15837, 2026 WL 2150640, at *5 (D.N.J. July 27, 2026). Moreover, "allowing litigation to continue may result in inconsistent findings and permitting arbitration to proceed will likely narrow the issues that will ultimately be before this Court." *Id.* These considerations outweigh the delay in resolving Plaintiff's claims against Experian and Trans Union. Therefore, the case is stayed, although Plaintiff may seek modification of the stay if arbitration does not address the overlapping issues.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, **IT IS** on this 23rd day of November 2026,

**ORDERED** that Credit Acceptance Corporation's motion to compel arbitration (ECF No. 10) is **GRANTED** insofar as it seeks to compel arbitration of Plaintiff's claims against Credit Acceptance Corporation; and it is further

**ORDERED** that Plaintiff's request for limited discovery concerning arbitrability is **DENIED**; and it is further

**ORDERED** that this action is **STAYED** and administratively terminated until further Order of the Court; and it is further

**ORDERED** that Plaintiff and Credit Acceptance Corporation shall file a joint status report concerning the status of the arbitration of Plaintiff's claims against Credit Acceptance Corporation ninety (90) days after the date of this Order, and every ninety (90) days thereafter.

**SO ORDERED**.

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**